THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Petitioner-Appellee, *v.* WILLIE WILLIAMS, a/k/a James Williams, Defendant-Respondent-Appellant.

First District (4th Division)    No. 62293

Opinion filed April 7, 1977.

James J. Doherty, Public Defender, of Chicago (Jack L. Uretsky and Anthony Pinelli, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Paul B. Biebel, Jr., Robert Cahill, Timothy Szwed, and Matthew A. Flamm, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

On March 6, 1975, the respondent, Willie Williams, was found mentally not fit to stand trial. He was remanded to county jail for transfer to the Department of Mental Health "as soon as possible." At a subsequent hearing, he was found to be a person in need of mental treatment and he was ordered committed to the Manteno State Hospital. Respondent appeals from the order of commitment.

We affirm.

The issues for review are (1) whether the failure of the order of March 6, 1975, to conform in its entirety to section 5—2—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—2) rendered the subsequent proceedings void and entitled the respondent to be released on bail or recognizance; (2) whether the competency hearing on April 14, 1975, was void for failure to comply with due process and the requirements set forth in article VIII of the Mental Health Code of 1967 (Ill. Rev. Stat. 1973, ch. 91½, par. 1—1 et seq.); (3) whether section 1—11 of the Mental Health Code of 1967 is unconstitutional because it allows institutionalization without an explicit finding that the patient is "dangerous" to himself or others; and (4) whether clear and convincing evidence supports the finding that the respondent was in need of hospitalization.

On March 6, 1975, the court found that the respondent was not fit to stand trial and entered an order that he be taken to the Cook County Jail and remanded to the Department of Mental Health "as soon as possible." Paragraphs 3 and 4 of the order provided that the respondent was to be confined until he had recovered from the condition of unfitness to stand trial or until ordered released. The paragraph of the printed order form which provided that a hearing was conducted in accordance with the procedures and within the time periods specified in the Mental Health Code was not completed by inserting the proper words to indicate that the "court" had made the "finding" rather than a "jury" had returned a "verdict."

On March 20, 1975, Dr. Goldsmith and Dr. Siomopoulos examined the respondent in the Cook County Jail and found him to be in need of hospitalization. The certificate of need for hospitalization signed by Dr. Goldsmith was not filed until March 26, 1975, the same date when the petition for hospitalization was filed. Also on March 26, 1975, the court set a hearing on a petition for March 31, 1975, and served the respondent with a notice of the hearing.

No hearing was held on March 31, 1975, and on April 1, 1975, after 24 days in the Cook County Jail, the respondent was transferred to the Illinois State Psychiatric Institute where he was again examined by Dr. Siomopoulos on April 1, and by Dr. Goldsmith on April 4. A second certificate of need for hospitalization was filed by Dr. Goldsmith on April 4, 1975. After a hearing on April 14, 1975, the respondent was found to be in need of mental treatment and he was ordered to be hospitalized at Manteno State Hospital.

At the hearing on April 14, counsel for the respondent made an oral motion that the petition be dismissed for failure of the State to comply with section 5—2—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—2) which requires that the respondent be remanded directly to a hospital, rather than to the county jail, for transfer to the Department of Mental Health. The assistant State's Attorney argued that the respondent was brought to the hospital within a reasonable time and that there were limitations with respect to the number of beds available at the Illinois State Psychiatric Institute. The court denied the motion for a discharge.

Dr. Siomopoulos testified that in both examinations the respondent was:

"[D]isoriented, coherent, but congenial and circumstantial in his associations. He was guarded, vague, and evasive and volunteered very little information about himself. His attention span was limited, and he had difficulty in concentrating, and it took him a long time to answer questions. * * * From time to time he would make grimaces.

The most prominent thing of his mental status was an extremely flat affect; marked flat affect. He stated that he has been in jail for almost three years awaiting trial, but he expressed no complaints about it. No anger. No fear of any sort, and he seemed to have no plans about his future."

When Dr. Siomopoulos stated the respondent had told him he had been carrying a gun, the respondent's attorney objected to the recitation of any circumstances surrounding the arrest. The court held that if the evidence does not tend to incriminate the person in the proceedings on trial, the

conversation could be available in this proceeding. Dr. Siomopoulos then related what the respondent told him, that he had dropped the gun he was carrying, and, as a result, a policeman was shot.

Dr. Siomopoulos testified that the respondent was suffering from schizophrenia, simple type, and he did not believe the respondent would be able to take care of himself. He doubted the respondent would be able to function in the community or rent an apartment or get a job. When asked whether he believed the respondent might intentionally or unintentionally harm others, Dr. Siomopoulos stated, "I have no information on which to base that opinion." He stated that the respondent was dangerous to himself or others.

Dr. Siomopoulos also testified that the respondent made psychotic grimaces which are very frequent in schizophrenic patients and that he communicated minimally and was unable to interact and mingle with others. He would be able to buy his own food and dress himself but he would not be able to find or hold a job.

The respondent testified he did not think he was in need of hospitalization and believed he could get a job. He stated he was in a hospital in Little Rock, Arkansas, for 5 months in 1971, and he had taken medication for his mental problems.

In its closing argument, the State argued that there was testimony that the respondent told the doctor he had committed certain acts of violence. Defense counsel objected and the court overruled, stating, "This is a summation, and he is allowed a reasonable latitude." The court held that the respondent was in need of mental treatment and remanded him to Manteno State Hospital.

OPINION

The respondent first contends that both the order of March 6, 1975, which ordered him returned to the Cook County Jail for transfer to the Department of Mental Health, and the subsequent order remanding him to the Manteno State Hospital were void. He argues that section 5—2—2 (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—2) mandated only that he be sent to a hospital upon a finding of unfitness to stand trial and that he be given a hearing in accordance with the procedures and within the time periods specified by the Mental Health Code of 1967. (Ill. Rev. Stat. 1973, ch. 91½, par. 1—1 *et seq.*) He concludes that in the absence of a valid order the court must release him on bail or recognizance as required by *People ex rel. Martin v. Strayhorn* (1976), 62 Ill. 2d 296, 342 N.E.2d 5.

Section 5—2—2(a) mandates that a defendant found to be unfit to stand trial must be remanded to a hospital and that a hearing to determine if he is in need of mental treatment be held in accordance with the procedures and within the time period specified by the Mental Health Code. It

further provides that if a person is found not to be in need of mental treatment according to the provisions of the Mental Health Code, the Department of Mental Health shall petition the trial court to release the defendant on bail or recognizance under such conditions as the court finds appropriate.

Section 5—2—2(b) provides that a defendant hospitalized under this section shall be returned to the court not more than 90 days after the court's original finding of unfitness and each 12 months thereafter for a re-evaluation of his fitness and either the State or the defendant may at any time petition the court for review of the defendant's fitness.

In the present case, the respondent argues the order signed by the court on March 6, 1975, failed to conform to section 5—2—2 in that (1) he was ordered sent back to the Cook County Jail for transfer to the Department of Mental Health, rather than ordering that he be remanded directly to a hospital; (2) the order contained two paragraphs which were apparently drafted to conform to the prior legislation (Ill. Rev. Stat. 1971, ch. 38, par. 104—3, repealed, effective January 1, 1973), which conflicts with section 5—2—2 in that the judgment order provided that he remain with the Department of Mental Health until such time after he recovered from his unfitness; and (3) in the paragraph ordering a hearing conducted in accordance with the procedures and within the time periods specified in the Mental Health Code, certain blanks in the printed form which indicated that the court and not a jury had made the finding of unfitness were not filled in.

■■ In this case, it is clear that the court had jurisdiction over the respondent and the subject matter, and, in conformance with the statute, it properly found that the respondent was not fit to stand trial and ordered that he be remanded to the Department of Mental Health. The fact that two paragraphs of the order were drafted to conform to a prior law and that certain blanks were not completed does not void the entire order. In the case of *People ex rel. Barrett v. Sbarbaro* (1944), 386 Ill. 581, 591, 54 N.E.2d 559, 562, the court stated:

> "In a case where a court has full jurisdiction to render one kind of judgment and renders one including that which it had a right to render, and something more, the excess is simply void."

Also see *Watson v. Auburn Iron Works, Inc.* (1974), 23 Ill. App. 3d 265, 318 N.E.2d 508.

■■ The fact that the respondent was in the Cook County Jail for 24 days, when he properly should have been admitted to a hospital, does not entitle him to his release. In the case of *People ex rel. Johnson v. Pate* (1970), 47 Ill. 2d 172, 265 N.E.2d 144, the court held that if a request for a parole hearing within a reasonable time was disregarded, it would appear to be an appropriate circumstance for relief under a writ of *mandamus*,

directing the parole and pardon board to comply with the provisions of its own rules. Similarly, in this case the respondent could have brought an action in *mandamus* while in jail to compel his transfer to a hospital.

The respondent argues he is entitled to be released on bail or recognizance and relies on *People ex rel. Martin v. Strayhorn* (1976), 62 Ill. 2d 296, 342 N.E.2d 5. However, in that case the court held that a defendant is entitled to a bail hearing, as required by section 5—2—2, after having been found not to be in need of mental treatment or hospitalization. *Cf. People v. Davis* (1975), 25 Ill. App. 3d 1007, 324 N.E.2d 58.

The respondent next contends he should be released because the competency hearing on April 14, 1975, was not held in accordance with procedural due process or with the requirements of article VIII of the Mental Health Code of 1967. Ill. Rev. Stat. 1975, ch. 91½, par. 8—1 *et seq.*

Section 8—1 of the Mental Health Code provides that any person 18 years of age or older may file a petition with the court asserting that a person is in need of mental treatment.

Section 8—2 sets forth that upon filing the petition with the court, the court may make such orders as may be necessary to provide for an examination and a hearing with respect to the person asserted to be in need of mental treatment.

Section 8—3 specifies that the court shall set the matter for hearing if a physician certifies that he has examined the person not more than 72 hours before the filing of the petition and is of the opinion the person is in need of mental treatment.

Section 8—4 provides that if the court has not been furnished with the certificate required by section 8—3, the court may order an examination of the person asserted to be in need of mental treatment.

Section 8—5 mandates that unless otherwise ordered, the person to be examined must be permitted to remain in his home pending any examination. No person may be detained for purposes of examination for more than 24 hours. However, if a certificate is executed by a physician that a person is in need of mental treatment, a hospital may admit the person and the court shall set the matter for hearing.

Section 8—6 provides that at least 36 hours before the time of examination fixed by the court, a copy of the petition and order for examination must be personally delivered to the person, his attorney, and the two nearest relatives of the person.

Section 8—7 specifies that when the court orders a hearing, it shall direct that notice be served upon the patient, his attorney, and persons required to be served pursuant to section 8—6. Notice must be served at least 48 hours prior to the time set for the hearing.

Section 8—8 requires that every hearing order pursuant to this article

shall be set for a date which is not more than 5 days, excluding weekends and holidays, after receipt by the court of the petition and the certificate or after the patient is admitted to the hospital, whichever is earlier.

A review of the record in this case fails to indicate whether all the notice requirements of section 8—6 and section 8—7 were complied with, and it is unclear whether the hearing on April 14 was held in conformance with section 8—8. On March 26, 1975, the court did set the hearing for March 31, 1975, in conformance with section 8—8, and it appears in the record that the respondent was given notice of that hearing. Although there is nothing in the record to indicate whether notices were served with respect to the hearing which took place on April 14, it must be noted that there were no allegations that these notices were not served, and section 9—1 of the Mental Health Code of 1967 (Ill. Rev. Stat. 1973, ch. 91½, par. 9—1) provides that a case may be continued on the court's own motion or by the parties.

■■ Moreover, in the case of *In re Munzer* (1975), 28 Ill. App. 3d 792, 329 N.E.2d 366, the court held that there was no legal requirement that service of the petition on the respondent be made a part of the record and that failure to bring such violations to the attention of the trial court in the initial stages of the proceedings resulted in a waiver. In this case the only contention made at trial was that the respondent had been improperly sent back to the Cook County Jail. There were no arguments made with respect to due process or the requirements of article VIII. Therefore, the respondent has not shown prejudice to himself and he must be deemed to have waived his arguments with respect to article VIII.

The respondent also contends his right to due process was violated when he was examined by physicians while being illegally held in the Cook County Jail without having been made aware of a right to remain silent. (*Lessard v. Schmidt* (E.D. Wis. 1972), 349 F. Supp. 1078, *vacated on other grounds* (1974), 414 U.S. 473, 38 L. Ed. 2d 661, 94 S. Ct. 713, *on remand* (E.D. Wis. 1974), 379 F. Supp. 1376, *vacated on other grounds* (1975), 421 U.S. 957, 44 L. Ed. 445, 95 S. Ct. 1943, *on remand* (E.D. Wis. 1976), 413 F. Supp. 1318). He argues he was prejudiced in that he made damaging admissions concerning the shooting of a policeman and he contends he should be released from custody. He also argues the examination in the Cook County Jail on March 20, 1975, was not properly a part of the proceedings because section 8—3 requires the petition must certify that a physician has examined the person not more than 72 hours before the petition for hospitalization was filed. Here, the petition was not filed until March 26, 1975, and a subsequent examination which was held on April 4, 1975, was required to comply with the statute.

Since *Lessard* is a Federal district court case its holding is not binding on the State courts of Illinois. (See *People v. Stansberry* (1971), 47 Ill. 2d

541, 268 N.E.2d 431, *cert. denied*, 404 U.S. 873, 30 L. Ed. 2d 116, 92 S. Ct. 121.) Furthermore, a review of the record discloses that defense counsel failed to object to the testimony complained of on the grounds now asserted. More importantly, when he was asked whether the respondent might intentionally or unintentionally harm others, Dr. Siomopoulos testified he had no information upon which to base an opinion. Thus, it is clear that the commitment was based on the respondent's inability to care for himself, and it was not based on the purported admission on March 20, 1975.

The respondent next contends that a mentally ill person may be involuntarily committed only upon a finding of dangerousness to himself or others and that section 1—11 of the Mental Health Code of 1967 is unconstitutional. He cites *Lynch v. Baxley* (M.D. Ala. 1974), 386 F. Supp. 378, and *Kendall v. True* (W.D. Ky. 1975), 391 F. Supp. 413. Again, these Federal decisions do not bind State courts of Illinois. However, in *Baxley*, the court stated:

> "In the case of dangerousness to self, both the threat of physical injury and discernible physical neglect may warrant a finding of dangerousness. Although he does not threaten actual violence to himself, a person may be properly commitable under the dangerousness standard if it can be shown that he is mentally ill, that his mental illness manifests itself in neglect or refusal to care for himself, that such neglect or refusal poses a real and present threat of substantial harm to his well-being, and that he is incompetent to determine for himself whether treatment for his mental illness would be desirable." (386 F. Supp. 378, 391.)

(Also see *Fhagen v. Miller* (1972), 328 N.Y.S. 2d 393, 278 N.E.2d 615, 617, *cert. denied*, 409 U.S. 845, 34 L. Ed. 2d 85, 93 S. Ct. 47.) Thus, "dangerousness" includes the situation where a person is unable to care for himself and the Illinois statute is not in conflict with the Federal authorities cited by the respondent.

In *People v. Sansone* (1974), 18 Ill. App. 3d 315, 322, 309 N.E.2d 733, 738, the court described the State's duty in regard to a civil commitment proceeding:

> "Inherent in civil commitment proceedings is the promise of the State, under a *parens patriae* theory, that the person who is being deprived of his liberty will receive treatment. Also inherent is the duty of the State to protect society from dangerous conduct of the mentally ill. The procedures set forth in the Illinois Mental Health Code are a legislative recognition that civil commitment is a deprivation of personal liberty, and their purpose is to provide adequate safeguards against unreasonable detention and commitment."

It must be noted that even if the court should find the respondent was

not accorded due process, he would not necessarily be entitled to his release. In *Lessard*, relied on by the respondent, the court ordered that the Wisconsin authorities review their cases and, where there was a good faith belief a patient should be institutionalized, a new hearing be held in conformity with the court's recommendation with respect to due process requirements. In this case, at most, the respondent is entitled to a new hearing. Under Illinois law, patients hospitalized under the Mental Health Code of 1967 are entitled to have their cases reviewed at least as often as every 6 months, and a patient has a right to a hearing within 10 days after receipt of his request. (Ill. Rev. Stat. 1973, ch. 91½, pars. 10—2, 10—3.) Thus, it appears that the only relief available to the respondent in this court, a new hearing, is already available to him under the Code.

■■ Finally, the respondent contends the finding of the court that he is in need of mental treatment was not supported by clear and convincing evidence. Under section 1—11 of the Mental Health Code of 1967 (Ill. Rev. Stat. 1973, ch. 91½, par. 1—11), a person in need of mental treatment is:

"* * * [A]ny person afflicted with a mental disorder, * * * if that person, as a result of such mental disorder, is reasonably expected * * * to intentionally or unintentionally physically injure himself or other persons, or is unable to care for himself so as to guard himself from physical injury or to provide for his own physical needs."

A mere finding that the respondent is afflicted with a mental disorder is an insufficient basis for concluding that a person may be hospitalized under the statute, and an explicit medical opinion regarding the patient's future conduct is required. *People v. Sansone* (1974), 18 Ill. App. 3d 315, 309 N.E.2d 733; *People v. Bradley* (1974), 22 Ill. App. 3d 1076, 318 N.E.2d 267; *In re Sciara* (1974), 21 Ill. App. 3d 889, 316 N.E.2d 153.

■■ In this case, Dr. Siomopoulos found that the respondent was suffering from schizophrenia, a simple type, and that he would be unable to function within the community, rent an apartment or hold a job. He concluded the respondent was dangerous to himself or others* and would not be able to take care of himself because of his minimal ability to communicate. In the case of *People v. Ralls* (1974), 23 Ill. App. 3d 96, 318 N.E.2d 703, the court affirmed a commitment order for hospitalization based upon psychiatric testimony that the patient was suffering from chronic schizophrenia and was unable to take care of herself. The diagnosis was based upon the patient's own testimony in which she was "far from concise" and made rambling statements.

---

* Dr. Siomopoulos' testimony whether respondent was dangerous to himself or others was conflicting. However, Dr. Siomopoulos maintained that respondent could not care for himself; and this is a sufficient basis, when viewed in conjunction with his mental disorder, to justify commitment.

Lastly, we note the hazards and stresses of everyday life can strain the coping mechanisms of the average citizen. The person who is distressed by a crippling mental illness is sadly deficient in the resources required to meet the challenges of everyday living and is highly vulnerable to these pressures. A person who may not be overtly suicidal or homicidal may nevertheless still require the protections which legal processes afford if his mental illness renders him incapable of functioning in a responsible fashion.

The record in this case and the applicable law amply supports the trial court's ruling. Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

DIERINGER, P. J., and ROMITI, J., concur.