In re WILLIAM CHAPMAN.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* WILLIAM CHAPMAN, Respondent-Appellant.)

First District (3rd Division)   No. 77-1602

Opinion filed December 20, 1978.

James J. Doherty, Public Defender, of Chicago (Timothy P. O'Neill and Timothy D. Murphy, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Mary Ann Callum, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

The respondent William Chapman was found to be in need of mental treatment (Ill. Rev. Stat. 1975, ch. 91½, par. 1—11) after a hearing in the circuit court of Cook County, and he was committed to the Department of Mental Health. The issues for review are whether the appeal should be dismissed as moot where the respondent has already been released; whether a medical opinion predicting respondent's future behavior is required in all cases; and whether the State proved by clear and convincing evidence that respondent could reasonably be expected to harm himself or another.

A petition for hospitalization, accompanied by two certificates of need for hospitalization, was filed on March 10, 1977. At the hearing on March 11, 1977, Ruth Sharp testified she was respondent's legal guardian and that respondent lived with her. Respondent is between 22 and 26 years old. She stated that shortly before the hearing she had observed him tear up his clothes and throw them at a scavenger truck. Respondent also beat Haley McDonald, a sickly man who was about 70 years old. She saw respondent hit McDonald in the head with his fist and kick him in the ribs. She did not know how it started, but after they had been separated respondent said, "Why did I do it?" and started crying. She also stated the respondent damaged all the beds in the apartment.

Dr. Golchini, a psychiatrist, testified that he had examined respondent and found that he had a very severe thought disorder. Respondent heard voices, used words inappropriately and made unusual movements with his eyebrows and lips. In addition, he was disorganized and difficult to understand. Respondent told him he had been brought to the hospital because he had torn up the room where he lives. He stated he had been in the hospital at Tinley Park many times and in other places as well. Dr. Golchini concluded that the respondent was suffering from schizophrenia, but he made no statement in regard to the probability of respondent's engaging in future dangerous acts.

The court made a finding that respondent was in need of mental treatment based on the testimony of Ruth Sharp and Dr. Golchini and respondent's actions in court.

The State first contends that the appeal should be dismissed as moot because the respondent was absolutely discharged after filing his notice of appeal. Because this appeal will be decided on other grounds this issue will not be considered.

The respondent contends that the State failed to prove that he could reasonably be expected to harm himself or another because the State did not provide an explicit medical opinion regarding his future behavior. Section 1—11 of the Mental Health Code (Ill. Rev. Stat. 1975, ch. 91½, par. 1—11) defines a person in need of mental treatment as "* * * any person afflicted with a mental disorder, * * * if that person, as a result of such mental disorder, is reasonably expected at the time the determination is being made or within a reasonable time thereafter to intentionally or unintentionally physically injure himself or other persons * * *." The respondent cites the cases of *People v. Williams* (1977), 47 Ill. App. 3d 861, 365 N.E.2d 404; *In re Love* (1977), 48 Ill. App. 3d 517, 363 N.E.2d 21; and *In re Welch* (1975), 28 Ill. App. 3d 716, 329 N.E.2d 286, for the proposition that medical opinions predicting future conduct are necessary.

The contention that an explicit medical opinion of the patient's future conduct is necessary emanates from the case of *People v. Sansone* (1974), 18 Ill. App. 3d 315, 309 N.E.2d 733, *appeal denied* (1974), 56 Ill. 2d 584. There the petition alleged that the respondent was agitated and demonstrated delusions, confusion and impaired judgment. The psychiatrist in *Sansone* testified that the respondent was not dangerous to himself and was able to care for himself, but that he could be dangerous to others in that he " 'might start a fight with someone telling them to clear off of his property.' " (18 Ill. App. 3d 315, 319.) There the respondent argued that in order to sustain the finding of a likelihood of injury to himself or others, proof of prior dangerous conduct must be adduced. The court affirmed the commitment on the ground that the medical opinion clearly stated that the person could reasonably be expected to engage in dangerous conduct. The court also made the comment that was relied upon in the three cases cited by the respondent here that a finding must be based on "an explicit medical opinion regarding the patient's future conduct and cannot be based upon a mere finding of mental illness." (18 Ill. App. 3d 315, 323.) However, the issue in *Sansone* was whether there must be proof of prior dangerous conduct. Within that context the quoted statement means that in absence of evidence of prior dangerous conduct there must be an explicit medical opinion regarding the patient's future conduct. The situation in the case at bar is the converse. There is evidence of prior dangerous conduct, but there was no explicit medical opinion regarding the patient's future conduct.

*In re Graham* (1976), 40 Ill. App. 3d 452, 352 N.E.2d 387, is indistinguishable from the case at bar. In *Graham* there was evidence of prior dangerous conduct. The medical opinion diagnosed the respondent's mental illness and recommended hospitalization for proper treatment. There was no medical prognosis of future dangerous conduct.

The court's finding that the respondent was in need of mental treatment was affirmed. In accord with *Graham* we believe that the evidence of prior dangerous conduct together with the finding that the respondent needs mental treatment meet the statutory requirements.

■■ Closely allied to this issue is the respondent's further contention that the State failed to prove by clear and convincing evidence the respondent could reasonably be expected to harm himself or another. We believe the record amply supports the clear and convincing evidence standard. (*In re Stephenson* (1977), 67 Ill. 2d 544, 367 N.E.2d 1273.) Ruth Sharp's testimony indicated that the respondent beat a sickly old man for no apparent reason. Although there was no testimony as to why the respondent beat the old man, the lack of a rational basis for the act was established when after the beating the respondent stated, "Why did I do it?" and then began crying. This testimony is sufficient to connect the attack on McDonald with his mental illness. In addition, Ruth Sharp testified that the respondent damaged some beds, and the respondent told the psychiatrist that he had been taken to the hospital because he had torn up his room.

For the above reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SIMON, P. J., and McNAMARA, J., concur.