THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DONALD McCABE, Defendant-Appellant.

First District (5th Division)    No. 79-1677

Opinion filed October 3, 1980.

James J. Doherty, Public Defender, of Chicago (Willie Wright and Ira Churgin, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Richard F. Burke, and John Ashenden, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Defendant appeals from a judgment entered on separate jury verdicts finding him unfit to stand trial and in need of mental treatment. He contends that (1) the judgment should be reversed because the trial court improperly submitted both questions for simultaneous determination by the jury; and (2) the evidence did not clearly and convincingly establish he was in need of mental treatment.

Defendant was initially charged with aggravated arson for allegedly throwing a Molotov cocktail into an occupied apartment. On three subsequent occasions between November 1978 and February 1979, he was found unfit for trial and in need of mental treatment. Then, on June 21, 1979, he was determined to be fit for trial and, on June 28, 1979, after a hearing on stipulated evidence, he was found guilty of arson and sentenced to 2½ years' probation. Three months later he was charged with violation of his probation; but, before any hearing thereon, another behavioral examination determined that he was not fit for trial and was in need of mental treatment. It appears that defendant contested those findings and demanded a jury for the hearing thereon.

The record reflects that at the commencement of the hearing, after conferring with the attorneys for both parties, the court stated:

"[I]t's understood by everyone that the jury is going to be asked to determine the defendant's fitness to stand trial, and if they determine that the defendant is unfit to stand trial, they would then be asked to determine whether or not the defendant is in need * * * of mental treatment."

In response thereto, defendant's counsel stated that:

"The instructions would be that they [the jury] are going to determine if he [defendant] is in need of mental treatment, not in need of hospitalization."

Before their selection, the trial court informed the jurors of the issues and explained to them that if they found defendant fit to stand trial their deliberation would end, but that if they found him unfit they would then be required to determine whether, based on the evidence, he was in need of mental treatment. The same explanation was given the jurors in the State's opening statement, and on neither occasion was any objection made.

Two board certified psychiatrists testified for the State on the question of defendant's mental condition. Dr. Hartman testified to several examinations between September 24 and October 4, 1979, the latter date

being only a few days prior to the hearing. She stated that he would become "very angry," had difficulty concentrating on one subject, was unkempt and unshaven, had lost weight, and had two black eyes. Defendant had sustained seven fractured ribs while in jail and told Dr. Hartman that "the way he talks to the people in the jail, they had no other choice but beating him up" and that he was beaten up because he had announced to the other inmates that he was a homosexual. Dr. Hartman said also that he had "implored [her] to let him go on his maniacal way until a catastrophe would happen" and that, during one examination, he had threatened to harm her. She testified that because defendant would have difficulty cooperating in his defense and because of his unstable attitudes toward the issues he talked about, he was "not fit for trial." She concluded further that defendant was a danger to himself and to others; that "at the present time he is not able to care for himself"; and that his provocations in jail and expectation of catastrophe were main factors in her opinion.

Dr. Kaplan testified that on his first examination of defendant, in December of 1978, he did not believe him fit to stand trial at that time on the aggravated arson charge because he "exhibited very poor judgment * * * and was unable to cooperate with his attorney." In January of 1979 and again in September of 1979, Dr. Kaplan found that defendant's judgment was seriously impaired and that he was unfit for trial. Dr. Kaplan testified further that from his examination three days before the hearing he found that defendant was unfit for trial, severely impaired mentally, unable to cooperate with his attorney, and a danger to himself and others. He diagnosed his condition as schizophrenia, schizo-affective type.

Defendant, although represented by the public defender, undertook personally to present his case against the advice of counsel. He first called Randy Kostas, a paramedic, who testified that one week prior to the hearing he had written a report which stated that defendant was unable to get along with any other prison inmate and that, at the time of the report, defendant was experiencing an "acute psychotic episode."

Defendant then took the stand and, although the trial court suggested that he speak in narrative form, he insisted on asking himself questions and answering them. In substance, he suggested that the opinions of the testifying doctors were influenced by the prior findings of unfitness and need of mental treatment, which he claimed were the result of an initial misdiagnosis. He also expressed disagreement with the testimony that he was a manic depressive, stating, "I'm not sure it's manic. I say it's normal."

After closing arguments, in which both defendant and his court-appointed counsel participated, the jury returned separate verdicts finding defendant unfit to stand trial and to be in need of mental treatment.

Judgment was entered on the verdicts, and defendant was committed to the Illinois Department of Mental Health for treatment.

OPINION

Defendant contends first that the judgment should be reversed because the determination in the same hearing of his fitness to stand trial and of his need for mental treatment was in violation of statutory provisions. The State maintains, on the other hand, that the statute does not preclude the simultaneous determination and, in any event, that if it were error to determine both in the same proceeding, there was no prejudice to defendant.

Defendant asserts that the purported right to separate hearings is compelled by section 5—2—2(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—2—2(a)), which provides in relevant part that:

> "If the defendant is unfit to stand trial * * * the court shall remand the defendant to a mental health or developmental disability facility, as defined by the Mental Health and Developmental Disabilities Code [Ill. Rev. Stat. 1979, ch. 91½, par. 1—100 *et seq.*], and shall order that a hearing be conducted in accordance with the procedures, and within the time periods, specified in such Act. The disposition of defendant pursuant to such hearing, and the admission, detention, care, treatment, habilitation, and discharge of any such defendant found to be subject to involuntary admission or to meet the standard for judicial admission shall be determined in accordance with such Act."[1]

We initially note that the record discloses defendant not only failed to object to the simultaneous determinations but seemingly acquiesced in the procedure, as no objection or contrary comment was made when the trial court stated at the commencement of the hearing:

> "[I]t's understood by everyone that the jury is going to be asked to determine the defendant's fitness to stand trial, and if they determine that the defendant is unfit to stand trial, they would then be asked to determine whether or not the defendant is in need * * * of mental treatment."

■■ Moreover, defendant's reading of the statute as granting a right to separate hearings cannot be found in its language. While the statute does not foreclose the trial judge from ordering separate hearings, it clearly does not mandate that this be done. We conclude, therefore, that in the instant case the simultaneous determination by the jury of fitness to stand

---

[1] The statute in question has been repealed since the determination in the instant case by Public Act 81-1217, §3, effective December 28, 1979. (Ill. Rev. Stat., 1980 Supp., ch. 38, par. 104—16(d).)

trial and need for mental treatment was not in violation of the statute in question.

Furthermore, it is well established that a reviewing court will not reverse a decision unless it was substantially prejudicial and affected the outcome of the trial (*Kyowski v. Burns* (1979), 70 Ill. App. 3d 1009, 388 N.E.2d 770), and the complaining party must demonstrate such prejudice (*O'Brien v. Walker* (1977), 49 Ill. App. 3d 940, 364 N.E.2d 533). In the instant case, defendant has made no showing as to how the simultaneous procedure caused any prejudice to him or in any manner affected the outcome of the trial. In this regard, we note that the findings of Dr. Hartman were the basis of her opinions on both fitness to stand trial and the need of mental treatment. As this was true also as to Dr. Kaplan, it appears unlikely that the simultaneous determination of those issues had any untoward effect on each other.

■■ Defendant next asserts the record does not support the finding that defendant was in need of mental treatment. With respect to this issue, the State was first required to demonstrate by clear and convincing testimony (*In re Stephenson* (1977), 67 Ill. 2d 544, 367 N.E.2d 1273) that defendant was suffering from a mental disorder, and then to establish that as a result of such mental condition (a) he was reasonably expected, at the time the determination was being made or within a reasonable time thereafter, to intentionally or unintentionally physically injure himself or other persons; or (b) he was unable to care for himself so as to guard himself from physical injury or to provide for his own physical needs (*In re Sciara* (1974), 21 Ill. App. 3d 889, 316 N.E.2d 153; also see *In re Crenshaw* (1978), 62 Ill. App. 3d 260, 378 Ill. App. 3d 1260; *In re Whitehouse* (1977), 56 Ill. App. 3d 245, 371 N.E.2d 990).

Here, Dr. Kaplan had examined defendant on five occasions—the last of which was three days before the hearing. Each time he reviewed previously compiled information concerning defendant and observed his general behavior during questioning. On each of his examinations, he found defendant unfit and in need of mental treatment. He testified that at the time of his last examination, defendant was still suffering from a severe mental disorder which he diagnosed as schizophrenia and because of which he was "both a danger to himself and a danger to other people." Dr. Hartman determined that after examining defendant several times within a few weeks of the hearing (including three days before), he was unfit for trial and in need of mental treatment; that he was unable to cooperate in his defense or to remain stable regarding his answers to questions; and that he was a danger to himself and others. During her examination just before trial, defendant told her that "the way he talks to the people in the jail, they had no other choice but beating him up"; that

he was beaten up because he had announced to the other inmates that he was a homosexual; that he had "implored [her] to let him go on his maniacal way until a catastrophe would happen"; and that during one of her examinations, he had threatened to harm her. This medical testimony was uncontradicted, and we believe that it clearly and convincingly established defendant was suffering from a mental disorder.

Furthermore, we note that both these doctors had examined thousands of patients and, when we consider their uncontradicted testimony with the fact that defendant had been convicted of arson and that he had threatened harm to Dr. Hartman, we believe it was clearly and convincingly shown that at the time the determination was being made defendant could reasonably be expected to intentionally or unintentionally cause physical injury to another person or persons. The case law provides strong support for this belief. In *In re Chapman* (1978), 67 Ill. App. 3d 382, 385 N.E.2d 56, the court found that respondent posed a threat of harm to himself or others and was in need of mental treatment based on the testimony of his legal guardian that respondent had beaten a sickly old man for no apparent reason and that, after doing so, respondent stated, "Why did I do it?" and then began crying. Similarly, in *In re Garcia* (1978), 59 Ill. App. 3d 500, 375 N.E.2d 557, the court found respondent to be in need of mental treatment based on the testimony of a psychiatrist who concluded it was likely that respondent would harm himself or another based on evidence that he became very angry, pounded on a table, claimed to be a famous playwright, tried to make atomic bombs, jumped up and down on his bed, talked to nonexistent people, burned papers in a frying pan, and on one occasion attempted to choke his mother. Further, in *In re Graham* (1976), 40 Ill. App. 3d 452, 352 N.E.2d 387, the court found that respondent's statement that her mother had to be "eliminated" and that she "would like to murder all of you" established that respondent also was a threat to others. Finally, in *People v. Sansone* (1974), 18 Ill. App. 3d 315, 309 N.E.2d 733, the court found the respondent to be in need of mental treatment based on a psychiatrist's testimony that respondent could be dangerous to others; that he had delusions; that he believed people were "after him"; and that he had told the psychiatrist that he had been arrested because he had ordered people off his property and that he believed persons were occupying his property illegally and were preparing to take his home. Also see *In re Stephenson; In re Spain* (1977), 54 Ill. App. 3d 26, 369 N.E.2d 305.

For the reasons stated, the judgment is affirmed.

Affirmed.

MEJDA and WILSON, JJ., concur.