318 So.2d 856 (1975)
Isaac BROWN, Jr.
v.
Dr. W.L. JAQUITH, Director of Mississippi State Mental Hospital.
No. 48420.
Supreme Court of Mississippi.
September 22, 1975.
*857 Barry H. Powell, David Seth Michaels, Jackson, for appellant.
A.F. Summer, Atty. Gen., by Edwin A. Snyder, Special Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, ROBERTSON and WALKER, JJ.
WALKER, Justice.
Appellant Isaac Brown, Jr., an inmate at the Mississippi State Hospital at Whitfield, Mississippi, appeals from an order of the Circuit Court of Pike County, Mississippi, dismissing his petition for writ of habeas corpus. We reverse.
Appellant contends that his present status of commitment is unlawful and argues that an indefinite commitment to a state mental institution solely on account of incapacity to stand trial, in this case over nine years, violates the due process clause and the equal protection clause of the Fourteenth Amendment of the United States Constitution and Section Fourteen of the Mississippi Constitution.
The record reveals that Isaac Brown was indicted at the March 1965 Term of the Circuit Court of Pike County, Mississippi, on two charges of murder and four charges of assault and battery with intent to kill and murder. On defendant's own motion suggesting insanity and requesting that he be examined to determine his mental condition and his ability to make a defense to the charge against him, the circuit court entered an order on April 8, 1965, that he be examined by the staff of the Mississippi State Hospital at Whitfield and that the officials of said hospital report their findings in writing back to the court. Brown was promptly transported to Whitfield in accordance with the order of the circuit court. Thirteen days later, the clinical director of the hospital notified the court that it was the opinion of the medical staff that appellant was mentally deranged, and appellant was given the diagnosis of schizophrenic reaction, paranoid type. It was also noted that this was a serious form of mental illness and that hospitalization and treatment for an indefinite period of time was indicated. Since that time, the appellant has remained in the hospital.
During the course of the habeas corpus hearing, Dr. W.L. Jaquith, Director of the Mississippi State Hospital, testified that there was a strong possibility that the appellant would never become competent to assist in his defense and that he had been incompetent during the entire period of his confinement at the hospital. He also testified that it was the unanimous opinion of the hospital staff that appellant was suffering from this mental illness at the time the crimes were committed in 1965. It is also noteworthy that Dr. Jaquith was of the opinion that appellant did not know the difference between right and wrong at the time the alleged offenses were committed.
Appellant's primary argument is directed toward the nature of his commitment, criminal commitment as opposed to civil commitment, and he does not seriously contend, under the facts of the case that he should be released except as an alternative to not being civilly committed.
The appellant contends and the state agrees that the basic constitutional principles *858 of law applicable to the instant case are to be found in Jackson v. Indiana, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972). In that case Jackson was a mentally defective deaf mute with the mental level of a preschool child. He could not read, write or otherwise communicate except through limited sign language. In May, 1968, at age twenty-seven, he was charged in the Criminal Court of Marion County, Indiana, with separate robberies of two women. Upon Jackson's plea of not guilty, the trial court set in motion the Indiana procedures for determining his competency to stand trial, and as the Indiana statute requires, a competency hearing was held at which petitioner was represented by counsel. The court received the examining doctors' joint written report and oral testimony from them and a deaf school interpreter through whom they had attempted to communicate with petitioner. The report concluded that Jackson's almost non-existent communication skill, together with his lack of hearing and his mental deficiency, left him unable to understand the nature of the charges against him or to participate in his defense. On this evidence, the trial court found that Jackson lacked comprehension sufficient to make his defense and ordered him committed to the Indiana Department of Mental Health until such time as that department should certify to the court that "the defendant is sane." (The court defined the term "sane", in the context of the Indiana statute, to be synonymous with competence to stand trial). Petitioner's counsel then filed a motion for a new trial, contending that there was no evidence that Jackson was "insane", or that he would ever attain a status which the court might regard as "sane" in the sense of competency to stand trial. Counsel argued that Jackson's commitment under these circumstances amounted to a "life sentence" without his ever having been convicted of a crime, and that commitment therefor deprived Jackson of his Fourteenth Amendment rights to due process and equal protection. The trial court denied the motion for a new trial. The Supreme Court of Indiana affirmed. (253 Ind. 487, 255 N.E.2d 515 (1970)). Certiorari was thereafter granted by the United States Supreme Court.
In an opinion by Justice Blackmun, the Court held that Jackson's commitment (1) violated the equal protection clause because he was subjected to a more lenient commitment standard and a more stringent standard of release than those generally applicable to all others not charged with offenses, and (2) violated the due process clause because he was indefinitely committed solely on account of his incompetency to stand trial and without a substantial probability that he would ever be able to participate fully in a trial.
In regard to the equal protection clause of the Fourteenth Amendment, the Court, in Jackson, said:
... we hold that by subjecting Jackson to a more lenient commitment standard and to a more stringent standard of release than those generally applicable to all others not charged with offenses, and by thus condemning him in effect to permanent institutionalization without the showing required for commitment or the opportunity for release afforded by § 22-1209 or § 22-1907 [civil commitment statutes], Indiana deprived petitioner of equal protection of the laws under the Fourteenth Amendment. (406 U.S. at 730, 92 S.Ct. at 1854).
In discussing Jackson's right to due process, the Court said:
... due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed.
We hold, consequently, that a person charged by a State with a criminal offense *859 who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. Furthermore, even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal. In light of differing state facilities and procedures and a lack of evidence in this record, we do not think it appropriate for us to attempt to prescribe arbitrary time limits. We note, however, that petitioner Jackson has now been confined for three and one-half years on a record that sufficiently establishes the lack of a substantial probability that he will ever be able to participate fully in a trial. (406 U.S. at 738-739, 92 S.Ct. at 1858).
The appellant Brown's case is precisely on point with Jackson, supra. Brown stands charged with several criminal offenses, has been confined at the Mississippi State Hospital [Mental] for over nine years under a circuit court order on account of his mental incapacity to stand trial, and according to Dr. Jaquith, the Director of the hospital, Brown is not making any progress toward that goal and there is no substantial probability that he will attain the capacity to stand trial in the foreseeable future. Therefore, unless appropriate steps are initiated by the state at the next term of the Circuit Court of Pike County to have appellant committed to a state mental institution under the civil commitment statutes, he shall be released from custody.
In cases such as the above, an order of the circuit court reciting that the accused has been indicted for a criminal offense and that the court is of the opinion that he is suffering from such mental disease or disorder as to cause him to be incompetent to stand trial and that he should be referred to the chancery court to undergo civil commitment procedures [in accordance with Mississippi General Laws, chapter 492, sections 1 through 11 (effective date July 1, 1975)], shall be in lieu of the affidavit for commitment provided for in section 3 of the aforesaid Laws.
We would also point out that certification by the circuit court of an accused for civil commitment does not constitute dismissal of the criminal charges pending against him nor does it divest the circuit court of jurisdiction of an accused. The state may, in cases deemed proper by it, file with the chancery court and the institution to which the accused is committed a request, in writing, that when the medical authorities are of the opinion that the mental condition of the accused has improved to the extent that he is able to aid and assist in making a rational defense to the charges pending against him, the state should be notified. But, such request filed by the state shall not in any way prevent the medical authorities of the institution to which the accused is committed from exercising their judgment and discretion as to the type of treatment and the nature of confinement [or lack of confinement] which the accused's condition, in their opinion, requires, just as they would exercise with respect to any other person with a like mental condition who is not under a criminal charge.
The appellant urges this Court to prescribe an arbitrary limit on the time that a person indicted for a crime, who has been found to be incompetent to stand trial, may be held to determine whether there is a substantial probability that he will attain *860 that capacity in the foreseeable future before he must be civilly committed.
In State ex rel. Matalik v. Schubert, 57 Wis.2d 315, 204 N.W.2d 13 (1973), that court held that six months after commitment was long enough to determine whether such a person as the petitioner would ever recover or would soon recover his competency to stand trial. The court further held that a reexamination of a defendant after the first six months was required and that if he were not competent to stand trial and had no likelihood of attaining such capacity [in the foreseeable future], or was making no progress toward that goal, the state either had to commence civil commitment proceedings or release him.
In State ex rel. Walker v. Jenkins, 203 S.E.2d 353 (W. Va. 1974), the defendant was committed to the state hospital as he was incompetent to stand trial for breaking and entering. He was retarded and the state admitted that the case was controlled by Jackson. The court held that until the legislature spoke, a period in excess of six months for the purpose of causing the defendant to regain his competency is prima facie unreasonable so that the state must either civilly commit the defendant or discharge him. However, we do not have sufficient medical evidence before us in this case to prescribe such arbitrary limits.
The judgment of the lower court denying appellant's petition for a writ of habeas corpus is reversed and the appellant shall be discharged from custody unless the state institutes civil commitment proceedings in chancery court no later than November 1, 1975.
Reversed and remanded with instructions.
GILLESPIE, C.J., RODGERS, P.J., and INZER, SMITH, SUGG and BROOM, JJ., concur.