(No. 47777.

THE PEOPLE *ex rel.* LARRY MARTIN, Petitioner, v. EARL E. STRAYHORN, Circuit Judge, *et al.,* Respondents.

*Opinion filed January 26, 1976.*

Gary H. Palm, Robert H. Smith, and Mark C. Zaander (law student), of Mandel Legal Aid Clinic, of Chicago, for petitioner.

William J. Fitzpatrick, Assistant Chief Counsel, and Maureen Mudron, Staff Counsel, of Chicago, for respondent Department of Mental Health and Developmental Disabilities.

James J. Doherty, Public Defender, of Chicago (Robert P. Isaacson and John Thomas Moran, Assistant Public Defenders, of counsel), *amicus curiae.*

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

We granted leave to petitioner, Larry Martin, to file an original action for *habeas corpus* (Ill. Rev. Stat. 1973, ch. 110A, par. 381(a)) seeking to require respondents, Earl E. Strayhorn, a judge of the circuit court of Cook County, and Director Leroy P. Levitt, to release petitioner from the custody of the Illinois Department of Mental Health and Developmental Disabilities (hereinafter Department of Mental Health) to the circuit court of Cook County and thereupon to be released either on bail or recognizance pursuant to section 5—2—2(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—2(a)). Petitioner contests the legality of his present confinement, principally arguing that it is in direct violation of section 5—2—2(a) of the Unified Code of Corrections.

The following facts were disclosed from the petition and the exhibits submitted. Petitioner was arrested on or about July 4, 1974, and charged with aggravated battery. He was subsequently indicted on that charge and on a charge of attempt murder. On January 14, 1975, Judge Strayhorn presided at a hearing to determine whether petitioner was fit to stand trial. On the basis of reports by psychiatrists from the Psychiatric Institute of the circuit court of Cook County, Judge Strayhorn found that petitioner was not fit to stand trial (Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—1) and remanded him to the Department of Mental Health pursuant to section 5—2—2(a) of the Unified Code of Corrections.

On April 8, 1975, a hearing was conducted before another judge of the circuit court under the procedures of the Illinois Mental Health Code (Ill. Rev. Stat. 1973, ch. 91½, par. 1—1 *et seq.*) to ascertain if the petitioner should be civilly committed to a mental health hospital. At this hearing two psychiatrists and a clinical psychologist testified as to the petitioner's condition. Each of the

psychiatrists stated that petitioner was not at that time "in need of mental treatment." Moreover, each expressed the belief that petitioner was fit to stand trial in that he could understand the nature of the charges against him and could cooperate with an attorney. While the clinical psychologist made no comment as to the petitioner's need, under legal standards, for mental treatment, he also expressed the opinion that petitioner was fit to stand trial. The hearing judge found the evidence was insufficient to warrant a determination that petitioner was "in need of mental treatment" necessitating his hospitalization. He ordered that petitioner be discharged from the custody of the Department of Mental Health.

On the basis of this order, the Department of Mental Health petitioned Judge Strayhorn to release the petitioner on bail or recognizance pursuant to section 5—2—2(a) of the Unified Code of Corrections. Petitioner's counsel also filed a similar motion for release. A hearing was held to consider these motions on May 23, 1975. At this hearing counsel for the petitioner submitted a letter from the Drug Abuse Program of the Department of Mental Health which indicated that petitioner, who is a drug addict, would be accepted into a treatment program. Specifically, counsel suggested that the petitioner be released on the condition that he enter the residential drug treatment program at Tinley Park Hospital and remain there until such time as he is capable of continuing on an out-patient basis.

In support of this proposal, Dr. Jewett Goldsmith, one of the two psychiatrists who had testified at the civil commitment hearing on April 8, 1975, was called as a witness. Dr. Goldsmith repeated his prior testimony that petitioner was not in need of mental treatment and was not dangerous to himself or to others. However, he qualified his earlier statement that petitioner was fit to stand trial. He now testified that in his opinion the petitioner could only understand the nature of the charges against him in a limited way, since he had no memory of

the events which led to those charges. Consequently, he could only cooperate with an attorney to the extent his limited memory would permit. Dr. Goldsmith further stated that if the petitioner's loss of memory was associated with his drug use, his memory probably would not return because the events pertaining to the alleged offenses would not have registered with him. Based on his last interview with the petitioner, which occurred prior to the civil commitment hearing, Dr. Goldsmith described the petitioner as a schizophrenic-paranoid type in remission. On questioning by the court, Dr. Goldsmith admitted that while a person, such as the petitioner, may need treatment for his mental disorder, he is not "in need of mental treatment" requiring involuntary hospitalization as that term is defined under the Mental Health Code.

In entering his findings of fact, Judge Strayhorn considered a letter dated May 21, 1975, from Dr. Edward J. Kelleher, Director of the Psychiatric Institute of the circuit court of Cook County, informing the court that in the writer's opinion the petitioner remained mentally unfit to stand trial based upon an examination conducted on May 19, 1975. Judge Strayhorn found, as a matter of law, that petitioner was still mentally unfit as that term is used in the Unified Code of Corrections, and he denied the petitions for release. He ordered that the petitioner be remanded to the custody of the Department of Mental Health until he recovers from his mental unfitness. A progress report was to be submitted within 90 days. Additionally, Judge Strayhorn noted that the Department of Mental Health has the authority itself to transfer the petitioner to any of its facilities, and should the Department determine a transfer to a drug abuse facility would be in the petitioner's best interests, it may do so.

This action comes before us in a unique posture. No one has submitted a brief in support of the position taken by Judge Strayhorn, who is merely a nominal party to this action (Ill. Rev. Stat. 1973, ch. 110A, par. 381(d)), and

respondent Levitt does not dispute the petitioner's argument. In fact, Levitt agrees that there is a statutory right to release. He clearly points out that the custody of petitioner, which is based solely upon Judge Strayhorn's May 23 order, is contrary to the order entered after the civil commitment hearing on April 8, 1975, and it places him in the difficult position of violating a court order whether he retains custody of the petitioner or releases him. In support of this common position, both petitioner and respondent Levitt rely on section 5—2—2 of the Unified Code of Corrections, which provides:

"(a) If the defendant is found unfit to stand trial or be sentenced, the court shall remand the defendant to a hospital, as defined by the Mental Health Code of 1967, and shall order that a hearing be conducted in accordance with the procedures, and within the time periods, specified in such Act. The disposition of defendant pursuant to such hearing, and the admission, detention, care, treatment and discharge of any such defendant found to be in need of mental treatment, shall be determined in accordance with such Act. If the defendant is not ordered hospitalized in such hearing, the Department of Mental Health shall petition the trial court to release the defendant on bail or recognizance, under such conditions as the court finds appropriate, which may include, but need not be limited to requiring the defendant to submit to or to secure treatment for his mental condition.

(b) A defendant hospitalized under this Section shall be returned to the court not more than 90 days after the court's original finding of unfitness, and each 12 months thereafter. At such re-examination the court may proceed, find, and order as in the first instance under paragraph (a) of this Section. If the court finds that defendant continues to be unfit to stand trial or be sentenced but that he no longer requires hospitalization, the defendant shall be released under paragraph (a) of this Section on bail or recognizance. Either the State or the defendant may at any time petition the court for review of the defendant's fitness.

(c) A person found unfit under the provisions of

this Article who is thereafter sentenced for the offense charged at the time of such finding, shall be credited with time during which he was confined in a public or private hospital after such a finding of unfitness. If a defendant has been confined in a public or private hospital after a finding of unfitness under Section 5—2—6 for a period equal to the maximum sentence of imprisonment that could be imposed under Article 8 for the offense or offenses charged, the court shall order the charge or charges dismissed on motion of the defendant, his guardian, or the Director of the Department of Mental Health.

(d) An order finding the defendant unfit is a final order for purposes of appeal by the State or by the defendant." Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—2.

This statute requires that the decision whether a defendant, who has been found unfit to stand trial, is "in need of mental treatment" and the custodial care and treatment which will be provided if such determination is made must be reached in accordance with the Mental Health Code. The factors to be considered in determining whether a person is "in need of mental treatment" are specified in section 1—11 of the Mental Health Code. It provides:

" 'Person In Need of Mental Treatment', when used in this Act, means any person afflicted with a mental disorder, not including a person who is mentally retarded, as defined in this Act, if that person, as a result of such mental disorder, is reasonably expected at the time the determination is being made or within a reasonable time thereafter to intentionally or unintentionally physically injure himself or other persons, or is unable to care for himself so as to guard himself from physical injury or to provide for his own physical needs. This term does not include a person whose mental processes have merely been weakened or impaired by reason of advanced years." Ill. Rev. Stat. 1973, ch. 91½, par. 1—11.

The language of section 5—2—2 is clear, and the commentary thereto supports the obvious intent of this statute. If a defendant, who previously has been found unfit to stand trial, is determined not to be "in need of

mental treatment," as that term is defined in section 1—11 of the Mental Health Code, and does not therefore require hospitalization, section 5—2—2(a) dictates that he be released on bail or recognizance. In the present action, the testimony of the psychiatrists offered at the civil commitment hearing and at the proceeding before Judge Strayhorn on May 23 indicated that petitioner was not "in need of mental treatment." While this court can understand Judge Strayhorn's hesitancy in releasing a defendant under the difficult circumstances of the present action, the statute does provide that the defendant's release be "under such conditions as the court finds appropriate." See *People ex rel. Hemingway v. Elrod,* 60 Ill.2d 74.

The present action is analogous to the situation in *People ex rel. Hall v. Massey,* Supreme Court Docket No. 46979. On January 29, 1975, this court, under its supervisory jurisdiction, ordered the circuit court of Cook County to conduct a hearing on petitioner's competency to stand trial. We further ordered that "If the petitioner is found unfit to stand trial, he shall be remanded to a hospital and a hearing shall be conducted, as provided in Section 5—2—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—2). If it is determined at that hearing that petitioner is not in need of mental treatment, the further procedure prescribed in said Section shall be followed and the Circuit Court shall conduct a bail hearing and enter an order in accordance with the above statutory provision."

The public defender of Cook County was granted leave by this court to file an *amicus* brief. In addition to the points petitioner raised, the *amicus* argued that a defendant in these circumstances has the right to release either on personal recognizance or on bail which he can financially secure. It is maintained that to allow bail to be set which cannot be made is to defeat the legislative intent of section 5—2—2 to provide treatment not involving actual commitment. We believe, however, that the posture

of this action is not in the proper framework for resolving this question, and it will therefore not be considered.

Accordingly, petitioner is remanded to the custody of the sheriff of Cook County, and Judge Strayhorn is directed to conduct a hearing in accordance with the directives of section 5—2—2(a) of the Unified Code of Corrections.

*Petitioner remanded,*
*with directions.*