THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN DUBLIN, JR., Defendant.—(THE DEPARTMENT OF MENTAL
HEALTH AND DEVELOPMENTAL DISABILITIES, Petitioner-Appellant.)

Second District   No. 77-166

Opinion filed August 23, 1978.

William J. Scott, Attorney General, of Chicago, and Philip A. Nicolosi, of Rockford (Maureen D. Mudron, Assistant Attorney General, of counsel), for appellant.

Daniel D. Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Barbara A. Preiner, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

This appeal principally poses the question whether the circuit court has authority to remand a defendant to the Department of Mental Health for further treatment when the defendant has been found unfit to stand trial but has been determined by the Department to be in no further need of mental treatment requiring hospitalization and has been administratively discharged. We conclude that the circuit court does possess such authority.

John Dublin, Jr., the defendant, was charged with the crimes of rape and indecent liberties with a child. Following a hearing, the court, on July 13, 1976, found the defendant unfit to stand trial pursuant to section 5—2—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—1) and remanded him to the custody of the H. Douglas Singer Zone Center, a mental hospital. On August 9, 1976, after a hearing in the circuit court, the defendant was found to meet the criteria for civil commitment under the Mental Health Code of 1967 (Ill. Rev. Stat. 1977, ch. 91½, par. 1—11); shortly thereafter, the superintendent of the Singer Zone Center granted the defendant an absolute discharge (Ill. Rev. Stat.

1977, ch. 91½, par. 10—4).[1] The Department then filed a petition, pursuant to section 5—2—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—2), praying the circuit court to release the defendant on bail or recognizance under such conditions as the court finds appropriate.

The circuit court subsequently conducted a hearing on the issues whether the defendant was fit to stand trial and whether he continued to require custodial treatment. At this hearing, a Department physician (a nonpsychiatrist) testified that, in her opinion, the defendant understood the nature and purpose of a criminal proceeding and could assist his lawyer in preparing a defense. She also testified that the defendant was mildly retarded; she did not indicate nor was she asked whether the defendant suffered from a mental disorder other than retardation. She stated that he would not pose a threat to society if he were released but kept under close supervision.

The People called two psychiatrists; one testified that, because of the defendant's inability to control his violent impulses, he should not be "at large among people"; the other testified that, in his opinion, the defendant "is a danger to society" and should not be released even for short periods of time. Although both psychiatrists indicated that the defendant was mildly retarded, neither testified that he suffered from a mental disorder other than mental retardation. Neither, however, was specifically asked if the defendant suffered from such a disorder. The People's two psychiatrists both testified that the defendant remained unfit to stand trial.

The circuit court found that the defendant remained unfit to stand trial; the court also found that the defendant continued to meet the criteria for civil commitment, which finding was contrary to the superintendent's finding that the defendant was no longer in need of custodial treatment. The court accordingly denied the petition for bail or recognizance and ordered the Department to retain custody of the defendant. The Department appeals.

■■ It is now well settled that where a trial court determines that a criminal defendant is unfit to stand trial but also determines that he does not meet the standards for civil commitment, it must conduct a hearing on the question of release on bail or recognizance. *People ex rel. Martin v. Strayhorn*, 62 Ill. 2d 296, 301-02 (1976); *People v. Ealy*, 49 Ill. App. 3d 922, 930-31 (1977); *People v. Theim*, 52 Ill. App. 3d 160, 161-63 (1977); *People v. Lang*, 62 Ill. App. 3d 688, 378 N.E.2d 1106 (1978).

■■ As a general rule, it may be said that where a court, after a hearing,

---

[1] No copy of the trial court's order of August 9, 1976, appears in the record on appeal; nor does a copy of the superintendent's discharge order appear in the record. However, the petition for release alleges the existence of the order and the discharge and no contradictory allegation was made by any other party.

commits a person to a mental hospital, it loses jurisdiction over the person so committed upon the latter's reception into the hospital (see, *e.g., Hill v. Relyea*, 34 Ill. 2d 552, 555-56 (1966)); thereafter, the superintendent of the hospital may grant an absolute discharge to any patient so committed without the advice or consent of the committing court. Ill. Rev. Stat. 1977, ch. 91½, par. 10—4.[2]

■■ Section 5—2—2(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—2(a)) provides that the court shall order a hearing on the need for commitment whenever a criminal defendant is found unfit to stand trial; the same subsection provides:

> "The disposition of defendant pursuant to such hearing, and the admission, detention, care, treatment and discharge of any such defendant found to be in need of mental treatment, shall be determined in accordance with [the Mental Health Code]." (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—2(a).)

The foregoing two provisions of section 5—2—2(a) of the Unified Code of Corrections, when read together with section 10—4 of the Mental Health Code (Ill. Rev. Stat. 1977, ch. 91½, par. 10—4), might appear to confer upon a superintendent of a mental hospital the authority to grant an absolute discharge to a patient remanded to such a hospital after a section 5—2—2 hearing. A careful reading of the entire section (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—2), however, makes clear that a superintendent of a mental hospital may not discharge a section 5—2—2 patient without a prior judicial determination that the patient is, indeed, no longer in need of custodial treatment.

Section 5—2—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—2) appears to require the Department, when it wishes to discharge a person committed pursuant to section 5—2—2, to first petition "the trial court to release the defendant on bail or recognizance, under such conditions as the court finds appropriate * * *"; this is the procedure that was followed in the instant case. Further, section 5—2—2 contemplates that the trial court, upon the filing of such a petition, shall conduct a hearing to determine if the defendant is still unfit for trial and if he is, indeed, no longer in need of custodial treatment. (See *People v. Patterson*, 54 Ill. App. 3d 931, 934-35 (1977).) The statute also provides, on the 90-day and one-year re-examination, that

---

[2] The General Assembly has recently rewritten section 5—2—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—4) so as to limit the superintendent's authority to discharge a person committed to a hospital pursuant to a proceeding wherein he had been found not guilty by reason of insanity under sections 115—3 or 115—4 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, pars. 115—3; 115—4); prior to this revision, a circuit court lost all jurisdiction over a criminal defendant who had been remanded to the custody of the Department after a finding or verdict of not guilty by reason of insanity. See, *e.g., People v. Adams*, 35 Ill. App. 3d 810, 814-15 (1976).

(1) if the trial court finds that the defendant continues to be unfit for trial and (2) if the trial court finds that the defendant no longer requires hospitalization, "the defendant shall be released under paragraph (a) of this Section on bail or recognizance." (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—2(b).) While these provisions do not directly deal with the problem before us we find a strong suggestion that a *judicial* finding of "no further need for hospitalization" is a predicate to the release of a section 5—2—2 patient.

■■ "All parts, provisions or sections of a statute must be construed together, in light of the general purpose and object of the statute, so as to make it harmonious and consistent in all its parts." (*People v. Schaffra*, 30 Ill. App. 3d 600, 602 (1975).) When subsections (a) and (b) of section 5—2—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—2) are read as a whole, it becomes manifest that where a defendant, unfit to stand trial, is also found to meet the criteria for civil commitment and is so committed, the superintendent of the receiving hospital may not discharge such a defendant prior to a judicial determination that such a defendant is no longer in need of custodial treatment. (*Patterson*, 54 Ill. App. 3d 931, 934-35 (1977).) Such a determination may be initiated by petition at any time. Ill. Rev. Stat. 1977, ch. 91½, par. 10—1.

■■ Here, the Department filed a petition seeking to discharge the defendant and the court conducted what appears from the record to be in the nature of a civil commitment hearing on the defendant's need for continued custodial treatment. The notice provisions of section 10—3 of the Mental Health Code (Ill. Rev. Stat. 1977, ch. 91½, par. 10—3), however, were apparently not followed. Although the Department does not raise this issue, we would be inclined, on this ground alone, to reverse the judgment and remand the cause for a new hearing (Ill. Rev. Stat. 1977, ch. 110A, par. 366(a)(5); *cf.* Ill. Rev. Stat. 1977, ch. 110A, par. 615(b)). Further, the record indicates that the litigants as well as the trial court were somewhat confused as to the nature of the hearing required upon the submission of the Department's petition. Hence, in our judgment, the interests of justice require a remand for a new evidentiary hearing. Ill. Rev. Stat. 1977, ch. 110A, par. 366(a)(5); *cf.* Ill. Rev. Stat. 1977, ch. 110A, par. 615(b).

At this hearing, the defendant will be required to show that he is no longer in need of mental treatment. He can do this by (1) proving that he does not suffer from a mental disorder other than mental retardation (Ill. Rev. Stat. 1977, ch. 91½, par. 1—11; see also *In re Sciara*, 21 Ill. App. 3d 889, 896 (1974)); or (2) by proof that even if he does suffer from a mental disorder, other than mental retardation, he cannot reasonably be expected, within a reasonable time after the civil commitment hearing,

"to intentionally or unintentionally physically injure himself or other persons," or be "unable to care for himself so as to guard himself from physical injury or to provide for his own physical needs" (Ill. Rev. Stat. 1977, ch. 91½, par. 1—11); or (3) by showing that, even if he does suffer from a mental disorder other than mental retardation and even if he does pose a "danger" to himself or others within the intendment of section 1—11 of the Mental Health Code (Ill. Rev. Stat. 1977, ch. 91½, par. 1—11), his "dangerousness" is not causally related to his mental disorder. Ill. Rev. Stat. 1977, ch. 91½, par. 1—11; see also *In re Love*, 48 Ill. App. 3d 517, 520 (1977); *In re Presswood*, 51 Ill. App. 3d 104, 107 (1977).

■■ If the defendant is able to make a showing, according to the foregoing criteria, that he is no longer in need of mental treatment, the circuit court must hold a hearing on the question of the defendant's release on bail or recognizance (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—2(a)). If the defendant is unable to make such a showing, the circuit court shall remand the defendant to the custody of the Department.

■■ The Department contends that the due process and equal protection rights of the defendant would be offended if he is not released pursuant to the superintendent's discharge. In making this argument, the Department relies upon *Jackson v. Indiana*, 406 U.S. 715, 32 L. Ed. 2d 435, 92 S. Ct. 1845 (1972). In *Jackson*, a defendant had been charged with two counts of theft; the value of the property allegedly stolen was about $9 in the aggregate; the defendant was found unfit to stand trial and was remanded to the Indiana Department of Mental Health until such time that the Department should certify that "the defendant is sane." No civil commitment hearing was ever held to determine if the defendant was in need of such hospitalization. The Indiana court merely determined that the defendant was not fit to stand trial because he could not effectively cooperate in his own defense. The Supreme Court, in discussing the due process aspects of the case, stated:

> "We hold, consequently, that a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant." 406 U.S. 715, 738, 32 L. Ed. 2d 435, 451, 92 S. Ct. 1845, 1858.

In the instant case, the defendant has already had one "customary civil commitment" hearing in August, 1976; he will be accorded another such hearing upon remand. Hence, we conclude that section 5—2—2, as we

have construed it, conforms to the requirements of *Jackson v. Indiana,* 406 U.S. 715, 32 L. Ed. 2d 435, 92 S. Ct. 1845 (1972).

The Department relies on *Brown v. Jaquith,* 318 So. 2d 856 (Miss. 1975), and *State ex rel. Haskins v. County Court,* 62 Wis. 2d 250, 214 N.W.2d 575 (1974). We find these cases to be inapposite because, in both, the defendants were being detained by the State, without bail, solely because they were deemed unfit to stand trial, and had never been accorded a civil commitment hearing. Other cases cited by the Department are also inapposite in our view.

Finally, the Department contends that section 5—2—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—2), as we have construed it, is repugnant to the equal protection clause of the fourteenth amendment. It should be noted that the commitment standard according to which the defendant was first found to be in need of hospitalization is the same standard used in all civil commitments (Ill. Rev. Stat. 1977, ch. 91½, par. 1—11). Further, the standard for release that the circuit court will use in the hearing upon remand will be whether the patient continues to be in need of custodial treatment, which is the same standard used by the superintendents of the several State mental hospitals for all patients. See, *e.g.,* Ill. Rev. Stat. 1977, ch. 91½, par. 10—4.

Section 5—2—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—2), as we have construed it, does prohibit a superintendent from releasing a section 5—2—2 inmate without the approval of the circuit court. No such requirement exists for other persons who have been civilly committed, but this requirement has an obvious rational basis in the circumstances before us. A criminal defendant who has not yet been released on bail or recognizance remains in the custody of the circuit court; hence, his position is quite different from that of a mental patient who has never been charged with a crime and who can go his own way immediately upon being discharged by the superintendent.

An analogous case is *Bolton v. Harris,* 395 F.2d 642 (D.C. Cir. 1968). In *Bolton,* the appellant attacked the commitment and release provisions of the District of Columbia Code that applied after a successful, voluntary plea of not guilty by reason of insanity. The appellant contended that the complained of provisions offended equal protection because they did not afford the same rights and privileges to such inmates as to persons civilly committed. Among other provisions, the appellant attacked one that allowed judicial review of a hospital administrator's decision to release a patient committed pursuant to such a plea, although the courts had no such right of review where a civilly committed person was concerned. The District of Columbia Circuit dismissed this argument thus:

> "We uphold the release provisions of Sec. 24—301(e) [of the D.C. Code] even though they differ from civil commitment procedures

by authorizing court review of the hospital's decision to release a patient. We do not think equal protection is offended by allowing the Government or the court the opportunity to insure that the standards for the release of civilly committed patients are faithfully applied to Subsection (d) [not guilty by reason of insanity] patients." 395 F.2d 642, 652.

We agree; we do not think equal protection is offended by allowing the circuit court the opportunity to insure that the standards for the release of civilly committed patients (see, *e.g.*, Ill. Rev. Stat. 1977, ch. 91½, par. 10—4) are faithfully observed in the case of section 5—2—2 patients.

For the foregoing reasons, we find that section 5—2—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—2), as we have interpreted it, does not offend the equal protection requirements of the fourteenth amendment.

For the reasons set forth above, the judgment of the Circuit Court of Winnebago County is reversed and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

Reversed and remanded.

RECHENMACHER and BOYLE, JJ., concur.