William **JOHNSON**, by his conservator Richard Johnson, on his own behalf and on behalf of all others similarly situated, Plaintiffs,

v.

Terry **BRELJE**, Superintendent of Chester Mental Health Center; Robert deVito, Director of Illinois Department of Mental Health and Developmental Disabilities, Defendants.

No. 78 C 1704.

United States District Court,
N. D. Illinois, E. D.

Nov. 8, 1979.

Susan M. Sitter, Maywood, Ill., Thomas Grippando, Edward Beis, Chicago, Ill., for plaintiffs.

William J. Scott, Atty. Gen., Maureen D. Mudron, Sp. Asst. Atty. Gen., Christine A. Bremer, Staff Atty., Alan E. Grischke, Sp. Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

The named plaintiff in this case, William Johnson, is presently involuntarily hospitalized at the Chester Mental Health Center, an institution operated by the Illinois Department of Mental Health. Johnson by this action under 42 U.S.C. §§ 1983, 1985(3), complains about the procedures by which he was assigned to the Chester facility, as well as certain of the living conditions at Chester.[1]

According to the allegations of the complaint, William Johnson was charged with the aggravated assault of his brother in October, 1975. In November, 1975, the Circuit Court of Cook County determined Johnson to be unfit to stand trial. Pursuant to Illinois law, Johnson later was civilly committed as a person in need of mental treatment, and involuntarily hospitalized at the Madden Mental Health Center. In April, 1976, Johnson was transferred to the Chester facility, but the next month he was reassigned to the Manteno Mental Health Center on the ground that the Chester facility could not provide the appropriate treatment. In October, 1977, Johnson was once again assigned to the Chester facility, this time pursuant to a newly-adopted departmental policy requiring the placement at Chester of all male patients charged with crimes and found unfit to stand trial.

The plaintiff argues that this most recent assignment to Chester, which allegedly was made without notice or an opportunity for hearing, violates both the procedural due process rights guaranteed by the fourteenth amendment and Illinois statutory law. He further complains that the policy of assigning to Chester all male patients charged with crimes and found unfit for trial constitutes an improper classification in violation of equal protection as well as federal and state statutory provisions. Finally, the plaintiff claims that certain of the conditions at Chester constitute violations of federal due process and equal protection rights and state law.[2]

The case is now before the Court on defendants' motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.[3] In considering such a motion, the Court must accept as true all material allegations of fact contained in the complaint. Under the liberal rules of pleading sanctioned by the Federal Rules of Civil Procedure, a complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Conley v. Gibson*, 355 U.S. 41, 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### Facial Validity of the §§ 1983 and 1985(3) Claims

The defendants argue that the federal claims should be dismissed as defec-

---

1. In a motion also before this Court, William Johnson seeks to have certified as a class all male patients found unfit to stand trial and civilly committed. The Court has decided that issue in a separate opinion issued today.

2. Jurisdiction over the state law claims is premised on the doctrine of pendent jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

3. The motion is addressed to the federal claims asserted by the plaintiff. Of course, if the federal claims were dismissed at this early stage of the proceedings, the pendent state claims would be dismissed as well. *Gibbs*, 383 U.S. at 725–26, 86 S.Ct. 1130.

tive on their face for failure to allege the necessary elements of a § 1983 or § 1985(3) action. With respect to § 1983, a plaintiff must allege that the defendant has deprived him of a federally secured right, and that the deprivation was accomplished under color of state law. *Adickes v. S. H. Kress and Company*, 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Plaintiff in this case clearly has met this burden. He alleges that the defendants, in their official capacity, have adopted and implemented the complained of policies. First Amended Complaint, ¶¶ 4, 5, 12. This satisfies the state action requirement. The plaintiff further alleges that these policies are contrary to certain federally secured rights. Thus, the § 1983 claim should not be dismissed as defective on its face.

■ The plaintiff, however, has failed to allege sufficient facts to support § 1985(3) as a basis for this action. By the terms of the statute, a necessary element of a § 1985(3) claim is the allegation of a conspiracy. In *Dombrowski v. Dowling*, 459 F.2d 190 (7th Cir. 1972), the court held that a discriminatory business decision by two or more executives of the same firm did not establish the conspiracy necessary under § 1985(3).[4] The Court emphasized that such behavior might not always escape the purview of § 1985(3):

> [a]gents of the Klan certainly could not carry out acts of violence with impunity simply because they were acting under orders from the Grand Dragon. But if the challenged conduct is essentially a single act of discrimination by a single business entity, the fact that two or more agents participated in the decision or in the act itself will normally not constitute

the conspiracy contemplated by this statute.

459 F.2d at 196.

■ The Seventh Circuit has reserved judgment on whether a determination of *policy* by an institute and its executives, which is essentially the case here, is a conspiracy within the meaning of § 1985(3). *Cohen v. Illinois Institute of Technology*, 524 F.2d 818, 830 (7th Cir. 1975). This Court, however, believes that the rationale of *Dombrowski* is applicable in a case such as this. This policy, as with the single act in *Dombrowski*, represents the professional judgment of the defendants within the scope of their enterprise. As is evident from the portions excerpted above, *Dombrowski* viewed the primary thrust of § 1985(3) as the prevention of discrimination by private groups whose *raison d'etre* was discrimination, such as the Ku Klux Klan. The ruling in *Dombrowski* reflected the concern that § 1985(3) not be extended to entities whose decisions sometimes resulted in discrimination. The fact that one of the many policies promulgated and administered by the defendants might be discriminatory certainly does not place the defendants in the same class as the Ku Klux Klan. Thus, under the reasoning of *Dombrowski*, the Court will strike § 1985(3) as a basis for this action.[5]

*Due Process Claims*

■ The essence of a procedural due process violation is the deprivation of a protected liberty or property interest without adequate procedural safeguards. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The interest may be one that is accorded by either state or federal law. *Meachum v. Fano*, 427 U.S.

---

**4.** A number of other jurisdictions have reached the same result. *See, e. g., Girard v. 94th St. & Fifth Ave. Corp.*, 530 F.2d 66 (2d Cir. 1976); *Baker v. Stuart Broadcasting Co.*, 505 F.2d 181 (8th Cir. 1974); *Coley v. M & M Mars, Inc.*, 461 F.Supp. 1073 (M.D.Ga.1978); *Novotny v. Great American Fed. Savings & Loan Ass'n*, 430 F.Supp. 227 (W.D.Pa.1977); *Keddie v. Pennsylvania State University*, 412 F.Supp. 1264 (M.D.Pa.1976); *Jones v. Tennessee Eastman Co.*, 397

F.Supp. 815 (E.D.Tenn.1974); *Cole v. University of Hartford*, 391 F.Supp. 888 (D.Conn.1975); *but see, Jackson v. University of Pittsburgh*, 405 F.Supp. 607 (W.D.Pa.1975).

**5.** The striking of § 1985(3) as a basis for this action, however, does not affect the ability of the plaintiff's claims to survive a motion to dismiss, since the plaintiff alleges state action sufficient to bring his claims under § 1983.

215, 223, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). The precise nature of the procedural protections required depends on the extent to which the complaining party might suffer "grievous loss," a determination which in turn necessitates an inquiry into the nature of the governmental function involved as well as the private interest affected. *Morrissey*, 408 U.S. at 481–482, 92 S.Ct. 2593.

■ A complaint is sufficient to state a claim for denial of procedural due process if it alleges the infringement of a protected personal interest. *Hostrop v. Board of Junior College District 515*, 471 F.2d 488, 494 (7th Cir. 1972). Under this standard, the procedural due process allegations state a claim for relief. The Illinois Mental Health Code provides that civilly committed patients can be transferred to a facility only if such a transfer is consistent with the treatment needs of the patient.[6] The Code also requires that any transfer can be made only after notice and an opportunity for hearing.[7]

■ The defendants argue that since the plaintiff already has been committed, he has no further liberty interest that must be protected by procedural due process. This position was espoused, and rejected, in *Covington v. Harris*, 136 U.S.App.D.C. 35, 43–44, 419 F.2d 617, 623–24 (D.C. Cir. 1969):

> It makes little sense to guard zealously against the possibility of unwarranted deprivations prior to hospitalization, only to abandon the watch once the patient disappears behind hospital doors. The range of possible dispositions of a mentally ill person within a hospital, from maximum security to outpatient status, is almost as wide as that of dispositions without. The commitment statute no more

authorizes unnecessary restrictions within the former range than it does within the latter.

The reasoning in *Covington* is equally applicable to the instant case. The Illinois statutes, as did the District of Columbia provisions, enumerate a number of liberty interests on behalf of mental patients, as well as safeguards to protect those interests. The plaintiff alleges that those interests were ignored by his transfer to Chester, a facility which he asserts is a maximum security hospital where his liberty is highly restricted in a number of ways.

The plaintiff alleges that the Chester facility is more restrictive than other hospitals in that (1) his opportunity for recreation and exercise is more limited; (2) his incoming and outgoing mail is censored; (3) he has no access to law books or legal counsel; and (4) visits from his family are greatly limited by the distance between Chester and his family's residence. The Court finds that these allegations are sufficient to state a claim for procedural due process.[8]

■ The plaintiff further alleges that the above conditions in and of themselves constitute violations of substantive due process. Under *Procunier v. Martinez*, 416 U.S. 396, 408, 94 S.Ct. 1800, 1809, 40 L.Ed.2d 224 (1974), an allegation that plaintiff's mail is censored states a due process claim:

> Both parties to the correspondence have an interest in securing that result [communication], and censorship of the communication between them necessarily impinges on the interest of each.

Although that case involved censorship of mail in the prison context, the Court finds no reason in principle that the reasoning of *Procunier* should not cover mental institutions as well.

---

6.  Ill.Ann.Stats., ch. 91½, § 3–908 (Smith-Hurd) (1979).

7.  Ill.Ann.Stats., ch. 91½, § 3–910 (Smith-Hurd) (1979).

8.  The exact nature of the proceedings required, if any, will depend upon the seriousness of the harm that is proven. At this stage, it is sufficient that the plaintiff alleges the lack of notice of hearing.

■ The failure to provide adequate exercise and recreation also states a cause of action. In *Duran v. Elrod*, 542 F.2d 998, 1001 (7th Cir. 1976), the Seventh Circuit reversed the trial court's dismissal of a claim by pretrial detainees that they were denied adequate exercise and recreational opportunities. As in that case, the Court here holds that the plaintiff should be allowed to present evidence on this claim.

■ Moreover, the alleged unavailability of law books or legal counsel states a due process claim under the reasoning of *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). The main concern in *Bounds* was the protection of the right of prison inmates to petition the courts for relief. This rationale applies with equal force to cases such as this one, where persons are involuntarily committed to mental hospitals. The determination of whether a person is to remain committed is in part a legal one; thus, there is a need to ensure that access to the courts is preserved.

■ The alleged limitation on family visits, however, fails to state a due process claim. In *Duran v. Elrod*, 542 F.2d 998, 1000 (7th Cir. 1976), the court found that an allegation that jail rules directly limited the number of permissible family visits stated a claim for violation of due process. In this case, however, the defendants have no express policy whose purpose is to limit visits. The practical limitation on visits of which the plaintiff complains is the result of defendants' assignment policy, the fact that Chester is 370 miles from his family's residence, and the limited financial means of his family. The Court does not believe that *Duran* contemplated that such a combination of circumstances would constitute a due process violation. This claim, insofar as it purports to state an independent due process violation, is dismissed.[9]

9. The limitation on visits remains relevant to the procedural due process claim.
10. Ill.Ann.Stats., ch. 91½, § 2–102 (Smith-Hurd) (1979).
11. Accordingly, the pendent state claims will remain in the case. The federal statutory claim based on 29 U.S.C. § 794, however, must be

### Equal Protection Claims

The plaintiff alleges several equal protection violations stemming from his assignment to Chester. He claims that the defendants' assignment policy improperly distinguishes between civilly committed persons who have been found unfit to stand trial and all other civilly committed patients. Although the plaintiff agrees that persons unfit for trial who are civilly committed might in some cases pose a security threat so as to justify assignment at a maximum security facility, he argues it is arbitrary to make this determination solely on the basis of the charge of criminality pending against them.

In *Jackson v. Indiana*, 406 U.S. 715, 728, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), the Supreme Court found that pending criminal charges were insufficient to constitute the independent showing of dangerousness required by Indiana law to justify civil commitment. As a result, the Court concluded that the commitment of those found unfit for trial under a more lenient standard than those committed who are not found unfit for trial deprived the plaintiff of equal protection of the laws. *Id.* at 730, 92 S.Ct. 1845.

■ Similarly, the Illinois Mental Health Code requires that patients be treated in the least restrictive environment possible according to an *individual* service plan.[10] The plaintiff charges that while all other civilly committed persons receive an individual determination of dangerousness, he did not receive such an evaluation prior to his assignment to Chester. This is sufficient under the reasoning of *Jackson* to state a claim for violation of equal protection.[11]

dismissed. *Doe v. Colautti*, 454 F.Supp. 621, 630 (E.D.Pa.1978). The regulations promulgated under this statute incorporate the Title VII requirement that a complaining party exhaust all administrative remedies available through the Secretary of Health, Education, and Welfare before filing a judicial action. Since the

■ The plaintiff further asserts equal protection violations stemming from the assignment to Chester of men, and not women, who are found unfit to stand trial and then civilly committed. The plaintiff alleges that this classification is based solely on the assumption that men present a greater security risk than women, and that it serves no interest substantial enough to justify the distinction. This portion of the complaint alleges a clear sex-based classification which operates to deprive the plaintiff of certain rights. As such, it states a claim for violation of equal protection rights. *Califano v. Goldfarb*, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977); *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976).

■ Finally, the plaintiff argues that his involuntary hospitalization at Chester violates equal protection in that he is treated differently from persons charged with crimes who are not found unfit to stand trial and civilly committed. However, the basic predicate for an equal protection claim—the similar situation of the two classes—is missing. The fact that plaintiff has been found unfit for trial and has been civilly committed clearly provides a rational basis for distinguishing him from others charged with crimes. It is not the charge of criminality which has led to his confinement; rather, it is the judgment that under the standards of the Illinois Mental Health Code he should be involuntarily hospitalized. Thus, the differential treatment of the plaintiff stems from his dissimilarity to other civilly committed persons. This equal protection claim, therefore, must be dismissed.

■ The plaintiff sets forth two additional equal protection claims with respect to policies governing his residency at Chester. He charges that the defendants' policy of not making periodic reviews of the need for hospitalization of persons found unfit for trial and then civilly committed violates equal protection. The Illinois Mental Health Code requires the evaluation of committed persons at least once annually to determine whether they should remain hospitalized. The plaintiff claims that this differentiation between those found unfit for trial and the general community of civilly committed individuals is without rational basis.

The defendants argue that under Illinois law, those found unfit for trial and civilly committed must be brought before the state court once a year to determine whether they should remain hospitalized, thus satisfying the obligation of an annual evaluation. Furthermore, the defendants argue that it would be fruitless to conduct an evaluation independent from that done by the state court, since the Illinois courts have ruled that persons found unfit for trial and civilly committed may not be released by hospital authorities without court approval. *People v. Dublin*, 63 Ill.App.3d 387, 20 Ill. Dec. 354, 380 N.E.2d 31 (2d Dist., 1978).

The provision relied upon by defendants, however, does not prohibit them from bringing civilly committed persons to the court for evaluation more often than once a year. Moreover, ch. 91½, § 4–310, imposes the duty of annual review on the defendants without exception. If the defendants, upon evaluating a person civilly committed after having been found unfit for trial, determined there no longer was a need for hospitalization, they could petition the state court for an immediate review of the person's status. There is no authority indicating that the state courts would refuse such a petition. Thus, ch. 38, § 1005–2–2 does not absolve the defendants from their duty of annual evaluation. As a result, the plaintiff's allegations state a claim for violation of equal protection.

■ Second, plaintiff alleges that the policy of refusing to grant temporary off-grounds passes to those found unfit to stand trial improperly denies him a right that is accorded to the general patient population. Again, the defendants argue that

---

plaintiff does not allege that he in fact has pursued available administrative recourse with respect to this federal right, this claim must be dismissed. ·

this claim is precluded by the Illinois decisional law requiring court approval for the release of persons found unfit to stand trial. The statutory provision which these decisions interpret, however, state that the care of those found unfit to stand trial must be in accordance with the requirements of the Mental Health Code. The plaintiff urges that the defendants still have the duty to determine if the rehabilitation of unfit persons would be furthered by the issuance of passes; and if so, that defendants have the obligation to petition the state court to allow the temporary release of such persons. The Court concludes that defendants are not precluded from issuing off-grounds passes under Illinois law. Accordingly, the plaintiff's allegations state an equal protection claim.[12]

### Immunity

■■■ The defendants argue that this action is precluded by principles of sovereign and common law immunity. Both contentions are without merit. It long has been recognized that the Eleventh Amendment does not bar a suit against an officer where the prospective injunctive relief is requested. *Edelman v. Jordan*, 415 U.S. 651, 664, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Stebbins v. Weaver*, 396 F.Supp. 104, 110 (W.D.Wis. 1975). The fact that the injunctive relief sought in this case might have some tangential impact on the state treasury does not bring this action within the scope of sovereign immunity. *Edelman*, 415 U.S. at 668, 94 S.Ct. 1347; *Stebbins*, 396 F.Supp. at 110. Nor does the monetary judgment sought against the defendant officers trigger the applicability of sovereign immunity.

This is not a case like *Edelman*, where the monetary relief awarded against the state officers—the disbursement of improperly withheld public aid funds—necessarily would be paid by the state. Such an award "is in practical effect indistinguishable in many aspects from an award of damages against the State." *Edelman*, 415 U.S. at 668, 94 S.Ct. at 1358. Here, the state would have no responsibility to satisfy any money judgment that might be rendered against the defendants. As a result, the action is not barred by Eleventh Amendment sovereign immunity.[13]

■■■ The defendants are correct in asserting that state officials retain under § 1983 a measure of quasi-judicial immunity. This defense, however, is not available to the defendants if they (1) knew or reasonably should have known that their actions violated the plaintiff's constitutional rights, or (2) took the action with the malicious intent to deprive plaintiff of his rights. *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). The burden is not on the plaintiff to show that the defendants are not entitled to quasi-judicial immunity; rather, this immunity must be pleaded by the defendant and determined by the fact-finder. *O'Connor v. Donaldson*, 422 U.S. 563, 576–77, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). As such, it is inappropriate to resolve this issue on a motion to dismiss.

### Available State Remedies

■■ Finally, the defendants argue that this Court should abstain and require the

---

**12.** Accordingly, the pendent state claims based on § 3–902(e) will remain in the case.

**13.** Indeed, it may be that the Court's conclusion in *Edelman* that § 1983 did not waive the state's sovereign immunity no longer is sound. That determination in part was based on the judgment that cities were not subject to suit under § 1983. Since that time, however, the Court in *Monell v. Department of Social Services*, 436 U.S. 658, 673–74, n.30, 98 S.Ct. 2018,

56 L.Ed.2d 611 (1978), has held that local governmental units are within the coverage of § 1983. The ultimate result of this decision may be to remove the veil of sovereign immunity from states in § 1983 actions. *See Hutto v. Finney*, 437 U.S. 678, 700–703, 98 S.Ct. 2565, 2579–2581, 57 L.Ed.2d 522 (1978) (Brennan, J., concurring); *contra, Hutto v. Finney*, 437 U.S. 678, 704–710, 98 S.Ct. 2565, 2581–2584, 57 L.Ed.2d 522 (1978) (Powell, J., dissenting in part).

plaintiff to pursue his remedies through the state courts. The general rule, of course, is that exhaustion of state remedies is not a prerequisite for the filing of a § 1983 action. *McNeese v. Board of Education*, 373 U.S. 668, 674, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963). Several courts, however, have required exhaustion of state remedies where a plaintiff (1) is not challenging the facial validity of a statute; (2) has adequate state administrative rather than judicial, remedies available; and (3) can challenge the complained of activity in a state court proceeding that has a different basis than in the federal proceeding. *United Automobile, Aerospace, and Agricultural Workers of America v. State Farm Mutual Automobile Insurance Co.*, 350 F.Supp. 522, 527 (N.D.Ill.1972); *see also Metcalf v. Swank*, 444 F.2d 1353 (7th Cir. 1971); *Elmwood Properties, Inc. v. Conzelman*, 418 F.2d 1025 (7th Cir. 1969), *cert. denied*, 397 U.S. 1063, 90 S.Ct. 1498, 25 L.Ed.2d 684 (1970).

The defendants have failed to establish these necessary elements. Although it is true that the plaintiff alleges certain state law violations the legal bases for which are quite independent of any federal claim, defendants have not shown that the plaintiff has any available state administrative remedies. Moreover, the policy which plaintiff challenges is alleged to be invalid on its face in several respects, further making exhaustion of state remedies inappropriate in this case. Thus, the Court will not require that the plaintiff exhaust state remedies in order to bring this § 1983 action.

To summarize, the Court will strike § 1985(3) and 29 U.S.C. § 794 as bases for plaintiff's action. Moreover, the Court will grant the motion to dismiss the claim that the practical limits on visits constitutes an independent due process violation, and the equal protection claim based upon the differential treatment of plaintiff and persons charged with crimes but not found unfit for trial and then civilly committed. In all other respects, the motion to dismiss is denied. It is so ordered.